KOZAKOVICH *v.* STATE OF INDIANA.

[No. 26,367.  Filed October 30, 1935.]

*Graves & Graves,* for appellant.

*Philip Lutz, Jr.,* Attorney-General, *Ralph E. Hanna,* Deputy Attorney-General, and *John Rawley,* for appellee.

HUGHES, J.—The appellant was convicted in the lower court for arson, and was sentenced to the Indiana prison for a period of not less than two nor more than fourteen years.

The appellant's assignment of errors is as follows:

(1) The court erred in overruling appellant's motion to quash the affidavit.

(2) The court erred in overruling appellant's motion for a new trial.

(3) Because of manifest error in the record, and, under the last assignment, the appellant sets out ten or more objections to the rulings of the court on the admission of certain evidence; the refusal to admit certain evidence; offers to prove; in permitting certain questions to be asked by the state; in refusing to strike out certain questions and answers, and in permitting the prosecuting attorney in asking leading, incompetent, immaterial, and prejudicial questions. The last assignment of error presents no question and is not a proper assignment of error. All of the questions attempted to be raised in this assignment should have been presented in the motion for a new trial. They cannot be made the subject of an independent assignment of error. *Ward* v. *State* (1913), 179 Ind. 524, 101 N. E. 809.

The appellant has expressly waived the first assignment, and therefore the only error properly assigned,

is that the court erred in overruling the appellant's motion for a new trial.

The reasons assigned in appellant's motion for a new trial are as follows:

(1) Irregularities in the proceedings of the court in which the defendant was prevented from having a fair trial, and particularly in the misconduct of John Underwood, prosecuting attorney, in conducting the examination of witnesses for the state over the objections of the defendant, which objections were overruled by the court and excepted to by the defendant.

(2) Errors of law occurring at the trial.

(3) The verdict of the jury is and was contrary to law.

(4) The verdict of the jury was not sustained by sufficient evidence, nor by any evidence.

(5) Refusal and failure of the court to instruct the jury to disregard the statements of John H. Underwood, prosecuting attorney, made in argument to the jury which in substance were that one John Moroz, a witness, was employing the attorneys for the defendant, there being no evidence of such fact, and objections being made with request for the court to so instruct the jury.

In the first reason assigned the appellant has failed to set out and show any irregularities in the proceedings of the court which prevented the defendant from having a fair trial other than mentioning the misconduct of John Underwood, prosecuting attorney. Such an allegation is too general and vague to present any question.

In the second reason assigned—errors of law occurring at the trial—the appellant fails to present any question for review, for the reason that he fails to show what, if any, errors of law were committed. None are pointed out or even suggested.

The 5th reason assigned, in the motion for a new trial, is based upon the refusal and failure of the court to instruct the jury to disregard statements made by the prosecuting attorney in his argument to the jury. There is nothing in the record to show what argument was made by the prosecuting attorney to the jury. There is no bill of exceptions showing what was said by the prosecuting attorney, whether any objections were made to the argument, nor the ruling of the court, if any, upon the objections. This reason for a new trial presents no question.

Therefore the motion for a new trial presents only two reasons:

(a) That the verdict of the jury is contrary to law.

(b) That it is not sustained by sufficient evidence, and unless this court can say that the verdict of the jury is contrary to law or is not sustained by sufficient evidence the judgment must be affirmed.

The affidavit alleges that the appellant on February 25, 1932, set fire to and burned a certain dwelling house owned by him and situated in Lake county (in Gary) to defraud certain insurance companies. The appellant had insurance to the amount of $12,000 on the dwelling and furniture, which amount was greatly in excess of the value of the property. The affidavit was filed on February 8, 1933. The fire occurred about 2:30 A. M. on February 25, 1932. The dwelling was a one-story brick bungalow. There were rooms in the basement and on the second floor. The appellant was living in the basement rooms and at the time of the fire the upper rooms were vacant. When the firemen arrived smoke was coming from the house and blue flames coming from the basement windows. The furnace was located in the basement, and around the furnace laths

were piled, some tied and some loose, which had been burned. In the attic three floor boards had been pulled up and laths and shavings pushed down between the boards. It took the firemen quite a while to put out the blue flames. A great amount of damage had been done to the house by the fire. A two-gallon bottle with some denatured alcohol was found in the attic and there was evidence that the contents of the bottle had been sprinkled around in the attic.

The evidence shows that the appellant left the house in the early part of the night in question and that about 9:40 P. M. he went to the home of Alex Persipko and remained with him all night. The next morning between eight and nine he was taken to the fire station and interrogated as to the fire. Sometime after the fire the appellant traded his property in Gary for a farm in Marshall county, Indiana, near Aetna Green.

When appellant traded for the farm, Alex Persipko loaned him $1,500, and took a mortgage on the farm. Later Persipko went down to the farm and lived with appellant and his wife. The evidence tends to show that Persipko and the wife of the appellant became very friendly and this caused an unfriendly feeling between Persipko and the appellant, and Persipko then told that the appellant told him that he burned his dwelling in Gary. He further said that the appellant asked him to loan him three hundred dollars to take out insurance on the farm, and that he would go fifty-fifty with him. He (appellant) wanted to take seven thousand dollars of insurance, and said he would give Persipko an extra three thousand dollar mortgage. Persipko told appellant unless he paid him on the mortgage he would report him to the Gary officers for burning his home.

Persipko testified that the appellant told him that he had an agreement with a Jew in Gary to burn the house and was to give him $500, but that the Jew went back on the proposition, and that he, the appellant, then made the fire according to the direction of the Jew— that he poured moonshine into the walls and opened the gas jets and lighted the gas, but it went out. That the first attempt to burn the building was on February 20, 1932. Persipko further testified that he went with appellant to his house, and the house was burned some and that there was an odor of gas; that appellant opened the doors and windows and let the gas out. Persipko also testified that appellant told him that the Jew told him "to open the gas and make big fire, make hole in walls and put candle and light." The appellant testified that before he left home on the evening of the fire, he made a fire in the furnace.

It further appears in the evidence that the appellant, prior to the fire, was very much worried about the mortgage on his home and was afraid that the holders would foreclose on it. He told two neighbors that before he would lose his property he would leave it in ashes, or words to that effect. It appears that there was a first and second mortgage on the property and the holder of the first mortgage had been demanding payment and threatening foreclosure.

Alex Persipko was a witness for the state, and there was evidence to the effect that one Moroz, in the presence of the appellant, offered Persipko two hundred dollars if he would sign a statement that he lied when he said the appellant told him that he set fire to his dwelling.

The appellant insists that all the evidence given in the case is circumstantial and is not sufficient to sus-

tain the verdict. While we do not agree with ██ appellant on this contention, but, accepting as true that the evidence is all circumstantial, this court in determining whether the evidence is sufficient to sustain a verdict of guilty will only consider the evidence most favorable to support the verdict. *Faulkenberg* v. *State* (1926), 197 Ind. 491, 151 N. E. 382. And, moreover, when circumstantial evidence is such that two conflicting inferences may be drawn therefrom, one tending to prove the guilt of the accused and the other favorable to his innocence, it is not within the province of this court on appeal to determine which inference ought to control. *Faulkenberg* v. *State*, *supra*. Neither will this court weigh the evidence to reverse a case, nor will it reverse a case for the reason there is a conflict, nor for the reason that all persons might not draw the same inferences from the facts proved. *Williams* v. *State* (1905), 165 Ind. 472, 75 N. E. 875.

We have carefully considered the evidence in this case and we are of the opinion that it is sufficient to sustain the verdict and that the verdict is not contrary to law.

Judgment affirmed.